IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

FRED SPENCER and                                                                                    PLAINTIFFS
SHELBY JUNE SPENCER

v.                                            NO. 3:04CV00236 JLH

DAN LANGSTON, In His Official Capacity as Sheriff of
Greene County, Arkansas, and Individually;
JAMIE MARTIN, In His Official Capacity as a Captain of
the Greene County Sheriff's Office, Greene County, Arkansas,
and Individually; JERRY ROTH, In His Official Capacity as
a Deputy of the Craighead County Sheriff's Office, and Individually;
and CHRIS LANE, In His Official Capacity as an Officer of the
Jonesboro Police Department, and Individually                                                   DEFENDANTS

**OPINION AND ORDER**

Fred Spencer and Shelby June Spencer brought this suit under 42 U.S.C. § 1983 against Greene County Sheriff Dan Langston, Deputy Sheriff Jamie Martin, and officers Jerry Roth and Chris Lane both individually and in their official capacities for their arrest for illegal possession of pseudoephedrine and the search of their home. The Spencers allege that the defendants violated their Fourth Amendment rights by unlawfully arresting them, subjecting each of them to a strip search at the Greene County Jail, and unlawfully searching their house. They allege that Langston's failure to train his deputies properly caused these violations of their constitutional rights. The Spencers also raise several state law claims. Langston, Martin, and Roth have moved for summary judgment. Lane has moved to adopt that motion for summary judgment. Without opposition, Lane's motion is granted. For the following reasons, summary judgment is granted in favor of all the defendants on all the Spencers' federal claims. This Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over the Spencers' state law claims.

**I.**

In the late afternoon of July 9, 2003, undercover officers Jerry Roth and Chris Lane from the Second Judicial Drug Task Force observed Fred Spencer in front of the Spencers' Express Mart in Jonesboro place a large box into his personal vehicle. The box was identical in size and appearance to a box of pseudoephedrine pills that drug investigators had recently seized. Roth and Lane had previously received information that the owner of that Jonesboro Express Mart was illegally selling large amounts of pseudoephedrine pills. The officers were pretty sure Spencer owned that store. They therefore decided to set up surveillance of the store.

A short time later, Fred Spencer carried another box from the store to his vehicle. Spencer then left the store in his vehicle with his wife Shelby Spencer as a passenger. The officers decided to follow the Spencers to see if they were going to make an illegal delivery of the pseudoephedrine pills. The Spencers first stopped at a fitness center. During the time the Spencers were at the fitness center, Roth called Chuck Easterling, the deputy prosecutor assigned to the drug task force, and advised him of the situation. Roth asked his opinion on whether they should arrest the Spencers for illegal possession of pseudoephedrine. The law on possession of pseudoephedrine in Arkansas states:

> (a)     It shall be unlawful for any person to possess more than . . . nine (9) grams of pseudoephedrine . . . alone or in a mixture, except:
>
> * * *
>
> (2)     Without a prescription, pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 401 et. seq., or regulations adopted under the act, products exempted under § 5-64-1103(b)(1) and (2), provided that the person possesses a sales and use tax permit issued by the Department of Finance and Administration;
>
> * * *

 (b) Possession of more than . . . nine (9) grams of pseudoephedrine . . . shall constitute prima facie evidence of the intent to manufacture methamphetamine or another controlled substance in violation of this subchapter, unless the person qualifies for an exemption listed in subsection (a) of this section.

 (c) Any person who violates the provisions of this section shall be guilty of a Class D felony.

Ark. Code Ann. § 5-64-1101. Roth informed Easterling that they believed that Fred Spencer was a store owner and may have had a license to possess pseudoephedrine at the store. Easterling responded that he was not familiar enough with the law pertaining to possession and would have to get back to them. Easterling advised the officers, however, to arrest the Spencers if they observed the Spencers make a delivery.

  An hour and a half later, the Spencers left the fitness center and went to a home improvement store. After twenty minutes at the store, the Spencers returned to their vehicle and drove towards Paragould with the officers following them. As the Spencers approached Greene County, the officers contacted Deputy Martin of the Greene County Sheriff's Department, who was at his home. They told Martin that they had received information about a Jonesboro convenience store selling a large quantity of pseudoephedrine pills and that they had witnessed a white male load two boxes of what appeared to be pseudoephedrine pills into his vehicle. The officers told Martin that those boxes were identical to a box of pseudoephedrine pills that drug officers had seized during a recent bust. The officers told Martin that they were following the vehicle as it headed toward the Greene County line. The officers advised Martin that if he could stop the vehicle it would be a "good check."

  Martin left his home in his vehicle and proceeded to the highway on which the Spencers were traveling. At a red light, Martin pulled up in the left lane next to the Spencers' vehicle. When Fred

Spencer turned right, Martin did not see him use his turn signal, so Martin put on his lights and pulled the Spencers over for not using the turn signal. At that point, officers Roth and Lane drove past where Martin had stopped the Spencers and halted to observe the stop at a distance where they were not able to assist Martin.

Martin approached the Spencers' vehicle and asked Fred Spencer for his driver's license. Fred Spencer told Martin that he had a concealed handgun permit and a pistol in his pocket. Martin removed the pistol and contacted Roth and Lane about the weapon. Martin asked Roth and Lane for backup because of the weapon. While Roth and Lane then took up a position closer to the scene of the stop, it is undisputed that they only observed and did not participate in the stop. Martin then asked Fred Spencer for consent to search the vehicle, which Fred Spencer granted. Martin saw the two large boxes and asked Fred Spencer what they were. Fred Spencer told Martin that they were cases of pseudoephedrine pills. He told Martin that he and his wife were store owners and that they were taking the pills to their house because they were afraid the pseudoephedrine might be stolen. Fred Spencer also volunteered to Martin that they had more pseudoephedrine pills at their home. Fred Spencer offered to show Martin his business checkbook to confirm that they owned the convenience store. At this point, Sheriff Langston arrived at the scene with another deputy.

Shortly after Langston arrived, Martin called Deputy Prosecutor Robert Thompson and informed Thompson that he was planning on making an arrest. Martin related everything that the drug task force officers had told him and the details of the traffic stop. It is undisputed that Martin told Thompson that Fred Spencer claimed to be a store owner. After listening to the facts, Thompson told Martin that he thought there was enough to arrest the Spencers. Martin then arrested both Spencers, cuffed them, and placed them in his vehicle. Martin did not initially have an arrest

warrant for either Fred or Shelby Spencer, but he did later obtain one for Fred Spencer. While they were being arrested, Fred Spencer appealed to Langston to step in and stop the arrest. Langston told Fred Spencer that he was not going to interfere in the arrest.

After arresting the Spencers, Martin went to obtain a search warrant for the Spencers' house from Greene County District Judge Dan Stidham.[1] After a brief warrant hearing, Judge Stidham issued a warrant to search the Spencers' house. There is no mention on the transcript of the warrant hearing that the Spencers were store owners. Martin, along with other officers, went to the house to execute the warrant. It is undisputed that neither Langston nor Roth nor Lane participated in the search. Martin seized an opened case of pseudoephedrine pills and $45,000 in cash from the house.

After their arrest, the Spencers were taken to the Greene County Jail. Greene County's policy for arrestees arriving at the jail is that they are to be undressed and put into jail garb. The arrestees are searched when they change clothing, with the jail matrons searching the females. The purpose of the search is to note whether the arrestee has any scars, marks, tattoos, or contraband on their person. Both Fred and Shelby Spencer were subjected to this procedure upon arrival at the jail. Shelby Spencer was released from the jail at 3:00 a.m. on July 10. Fred Spencer was required to post a $35,000 bond. He was released in the afternoon of July 10.

It is undisputed that no criminal charges were ever filed against either of the Spencers. On July 2, 2004, the Spencers filed this lawsuit in federal court.

## II.

A court should enter summary judgment if the evidence, viewed in the light most favorable

---

[1] The transcript of the warrant hearing identifies the judge as Van Stidham, but that is a typographical error.

to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

**A.     Individual Capacity Claims**

     **1.     Officers Roth and Lane**

Section 1983 imposes liability only on an officer whose conduct "subjects, or causes to be subjected," a person to a violation of the person's constitutional rights. Here, the undisputed facts show that officers Roth and Lane did not deprive the Spencers of any constitutional rights. It is undisputed that neither Roth nor Lane participated in the arrest of the Spencers or the search of their home. Up to the point when they contacted Martin, Roth and Lane had done nothing but follow the Spencers to see if they were going to illegally distribute the pseudoephedrine pills. When Lane spoke with Martin, he stated that stopping the Spencers might be a "good check"; he did not say anything about arresting the Spencers. Lane and Roth, in fact, were unsure whether the possession of more than nine grams of pseudoephedrine was illegal and were waiting to see if the Spencers attempted to distribute the pseudoephedrine pills.

Lane and Roth initially observed Martin's stop of the Spencers from a distance. While they did come back to the scene after Martin expressed concern for his safety stemming from Fred Spencer's concealed weapon, Roth and Lane did nothing more than observe the traffic stop until additional deputies arrived at the scene. The Spencers do not allege that either Roth or Lane had

supervisory authority over Martin and therefore had a duty to intervene during the arrests of the Spencers. *See, e.g.*, *Bolin v. Black*, 875 F.2d 1343, 1347 (8th Cir. 1989); *Wilson v. City of North Little Rock*, 801 F.2d 316, 322 (8th Cir. 1986). Because Roth and Lane did not commit any of the alleged constitutional violations, summary judgment is granted on all of the Spencers' claims against them.

### 2. Qualified Immunity for Officer Martin

#### a. The Arrests

Officer Martin asserts that he is entitled to qualified immunity for the arrests of the Spencers. While Martin later obtained an arrest warrant for Fred Spencer, Martin did not have a warrant when he initially arrested the Spencers. A warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments. *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005). If an officer has probable cause to arrest a citizen, no Fourth Amendment violation occurs and the officer cannot be liable. *Peterson v. City of Plymouth*, 60 F.3d 469, 473 (8th Cir. 1995). Probable cause exists where the "facts would justify a reasonably cautious police officer's belief that the individual arrested has committed or was committing an offense." *Anderson v. Cass County, Mo.*, 367 F.3d 741, 745 (8th Cir. 2004).

Even if an officer did not have probable cause, however, qualified immunity may shield an officer from suit if a reasonable officer could have believed that the arrest was lawful in light of clearly established law and the information that the officer possessed. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991). Thus, law enforcement officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987). An

officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence suggests that probable cause exists. *Anderson*, 367 F.3d at 747. The key inquiry is whether the arrest was objectively reasonable, i.e. whether a reasonable officer could have believed that probable cause existed for the arrest. *Ripson v. Alles*, 21 F.3d 805, 808 (8th Cir. 1994).

Here, a reasonable officer standing in the shoes of Martin could have believed that probable cause existed to arrest the Spencers for possession of more than nine grams of pseudoephedrine. Roth and Lane told Martin that they had received information about a convenience store selling large quantities of pseudoephedrine and that they had witnessed a white male at the store load two large boxes of pseudoephedrine pills – each similar to a box of pseudoephedrine pills that was recovered during a recent drug raid – into his personal vehicle. Each box contained a quantity of pseudoephedrine far in excess of the nine-gram maximum allowed under Ark. Code Ann. § 5-64-1101. The Spencers were headed away from the convenience store when Martin stopped them. At this point it was not unreasonable for Martin to conclude, as he did, that the Spencers were acting illegally. In close qualified immunity cases, the absence of judicial guidance can be significant because "[p]olice officers are not expected to parse code language as though they were participating in a law school seminar." *Walker*, 414 F.3d at 993 (quoting *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1108 (8th Cir. 2004)). The relevant portion of the statute prohibits possession of more than nine grams of pseudoephedrine except for nonprescription medication possessed by a person who possesses a sales and use tax permit. Ark. Code Ann. § 5-64-1101. It is not clear that someone who has a sales and use tax permit at a place of business can lawfully possess more than nine grams of pseudoephedrine away from the place of business to which the permit has been issued. *Cf.* Ark.

Code Ann. § 26-52-204, 205 (the permit is valid only for business transactions at the place designated on the permit, and the permit must be conspicuously displayed at the place of business for which the permit was issued).[2]  The only published opinion construing the statute is *Ford v. State*, 75 Ark. App. 126, 55 S.W.3d 315 (2001).  There, a store manager caught with four cases of pseudoephedrine in her car was convicted of possession under Ark. Code Ann. § 5-64-1101, even though the store she managed had a sales and use tax permit.  *Id.*, 75 Ark. App. at 131, 55 S.W.3d at 319.  The court stated:

> The evidence demonstrates that four cases of pseudoephedrine were seized from her car containing 576 bottles of pseudoephedrine tablets, and appellant does not contest that she possessed more than five grams of ephedrine.  Her contention is that she held the tablets under the authority permitted to the store.  However, appellant is the person most interested in the outcome of this trial, and she was in possession of the store's property, selling it outside the store and admittedly keeping profits from these sales.  This was a fact question on credibility, left to the fact finder to resolve and which we do not disturb on appeal.  *Ashe v. State*, 57 Ark. App. 99, 942 S.W.2d 267 (1997).  We hold that sufficient evidence supports her conviction on this charge.

*Id*. *Ford* is the only judicial guidance on the issue; and it indicates that to have a sales and use tax permit at a store does not preclude prosecution for possession of more than nine grams of pseudoephedrine away from the store.[3]  Although *Ford* was selling the pseudoephedrine and the Spencers were not, selling pseudoephedrine is not an element of the crime under Ark. Code Ann. § 5-64-1101.  The court in *Ford* held that it was a fact question on credibility left to the finder of fact to decide whether Ford possessed the pseudoephedrine under the auspices of the sales and use tax

---

[2] While these sections of the Arkansas Code refer to a "gross receipts tax permit," Ark. Code Ann. § 26-52-201, not a sales and use tax permit, the terms are synonymous.  The Arkansas Department of Finance and Administration issues only one type of permit for business in Arkansas.  *See* Ark. Dep't of Fin. & Admin., Arkansas: Starting a New Business 2 (2005), http://images.ark.org/dfa/income_tax/documents/starting_a_new_business.pdf.

[3] Incidentally, the events in *Ford* occurred in Paragould.

permit at the store. The bare statement that it is a "fact question on credibility, left to the trier of fact" is hardly enough judicial guidance to justify stripping an officer of qualified immunity for arresting someone who has more than nine grams of pseudoephedrine in a personal vehicle when that person asserts that the possession is legal due to a sales and use tax permit at a store. All that can be known with certainty from *Ford* is that the existence of a sales and use tax permit at a store does not automatically protect a person from prosecution under § 5-64-1101 if that person takes pseudoephedrine away from the store. The Spencers cannot show that the legality of their conduct was (or is) clearly established under Arkansas law. *Cf. Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir. 1998).

Fred Spencer did tell Martin that he was a store-owner and attempted to show Martin his business checkbook. However, the sales and use tax permit was not in his possession with the pseudoephedrine; it was at the store (where it was supposed to be). That Fred Spencer stated that he owned a store did not change the fact that the Spencers were transporting an amount of pseudoephedrine far in excess of the legal limit for possession away from their place of business. In the mind of any reasonable law enforcement officer there would be a clear difference between a delivery truck carrying pseudoephedrine *towards* a store for a delivery and two store owners – who have loaded cases of pseudoephedrine in their personal vehicle – taking the drugs *away* from their store. Legitimate sales of pseudoephedrine would be made at the store, not from a personal vehicle or from a home; and so large quantities of pseudoephedrine would be legitimately possessed at the store but not necessarily in a personal vehicle or at home.

Moreover, Martin did not just disregard that Spencer had told him he was a store owner. He responded reasonably to that potentially exculpatory fact by soliciting the opinion of the deputy

prosecutor, Robert Thompson. It is undisputed that Martin apprised Thompson of Spencer's claim that he was a store owner. *See Kincade v. City of Blue Springs, Mo.*, 64 F.3d 389, 399 (8th Cir. 1995) (whether counsel had been given complete information about facts giving rise to the controversy is a factor in whether to grant qualified immunity because of reliance on the advice of counsel). Thompson's concurrence in Martin's decision to arrest the Spencers is further evidence of the reasonableness of Martin's belief that he had probable cause. *See E-Z Mart Stores, Inc. v. Kirksey*, 885 F.2d 476, 478 (8th Cir. 1989) (finding that advice from an attorney can be used to show the reasonableness of the action taken). Only after Thompson agreed that Martin had enough to arrest the Spencers did Martin arrest them.

In view of the ambiguity of the statute, the fact that the only judicial guidance indicates that a person with a sales and use tax permit can be prosecuted for possession of excessive amounts of pseudoephedrine away from the store, and the fact that Martin obtained legal advice from the deputy prosecutor, Martin could have reasonably believed probable cause existed for the arrest. He is therefore entitled to qualified immunity.

    **b. Search of the House**

Martin asserts qualified immunity for his role in the search of the house. A defendant is entitled to qualified immunity if his actions are objectively reasonable in light of the clearly established law at the time of his acts. *Turpin v. County of Rock*, 262 F.3d 779, 783 (8th Cir. 2001). It is clearly established law that a factual omission from an application for a search warrant made intentionally or with reckless disregard for the truth violates the Fourth Amendment. *See Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); *Turpin*, 262 F.3d at 783. Even if the omission was made intentionally or recklessly, no Fourth Amendment violation occurs if the

application for the warrant, reconstructed with the omitted material, would still provide probable cause to search. *Hunter v. Namanny*, 219 F.3d 825, 829 (8th Cir. 2000). There is no evidence that when Martin left out telling Judge Stidham at the search warrant hearing that the Spencers claimed to be store owners, he was deliberately trying to mislead Stidham or acting in reckless disregard for the truth. Regardless of whether Martin acted intentionally or recklessly, however, the officers would have still had probable cause to search the Spencers' house even if Martin would have told Stidham at the hearing that the Spencers were store owners.

Probable cause exists to issue a search warrant if there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Roberson*, 439 F.3d 934, 939 (8th Cir. 2006). As was explained above, it was reasonable for Martin to conclude that the Spencers possessed the pseudoephedrine pills away from their store illegally. Furthermore, Fred Spencer told Martin that he was taking the pseudoephedrine pills to his home and admitted to Martin that he had more pseudoephedrine pills at his home. Martin had information that reasonably could have led him to discover evidence of illegal possession of pseudoephedrine at the Spencers' home. Martin is therefore entitled to qualified immunity on the Spencers' unlawful search claim.

### 3. Sheriff Langston

The Spencers allege that Sheriff Langston participated in the alleged violations of their constitutional rights. Specifically, the Spencers allege that Langston ought to have stopped Martin from arresting them when he arrived at the scene of the arrests. They also allege that Langston's failure to train his officers caused the alleged violations of their constitutional rights. A superior officer may be individually liable only where he either directly participates in a constitutional violation, or where his failure to train or supervise the offending actor causes the constitutional

violation. *Forrest City Police Dep't v. Tilson*, 28 F.3d 802, 806 (8th Cir. 1994). The undisputed facts show that Langston did not directly participate in the search of the Spencers' home. To the extent that Langston directly participated in the Spencers' arrest, he is entitled to qualified immunity for the same reasons given in Part II.A.2.a. above.

In order to make out a claim for failure to train, it is necessary for a plaintiff to show that, in light of the duties assigned to specific officers, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the supervising officer can reasonably be said to have been deliberately indifferent to that need. *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996). A supervising officer can therefore only be liable if he received notice of a pattern of unconstitutional acts committed by subordinates. *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997). The Spencers offer no evidence of such a pattern regarding either unlawful arrests or searches. Langston is therefore entitled to summary judgment on the Spencers' failure to train claim.

**B.     Liability of Greene County, Craighead County, and the City of Jonesboro**

The Spencers also bring their claims against the officers in their official capacity. A suit against an officer in his official capacity is the same as a suit against the municipality that employs him. *Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992). Because summary judgment has been granted in favor of all the defendant officers on all the Spencers' federal individual capacity claims, summary judgment is granted on all of the Spencers' federal official capacity claims as well. *See Turpin*, 262 F.3d at 784 (concluding that because district court properly granted officers summary judgment on qualified immunity grounds, county likewise was entitled to summary judgment). In any event, there is no evidence that any of the municipalities had a policy or custom that

13

unconstitutionally deprived the Spencers of their constitutional rights. *Kuha v. City of Minnetonka*, 365 F.3d 590, 603-04 (8th Cir. 2004).

## CONCLUSION

Without objection, Chris Lane's motion to adopt defendants' motion for summary judgment is GRANTED. Document #43. For the reasons stated above, the defendants' motion for summary judgment on the Spencers' federal claims is GRANTED.[4] Document #39. This Court declines to exercise supplemental jurisdiction on the Spencers' state law claims and they are hereby DISMISSED.

IT IS SO ORDERED this 24th day of April, 2006.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[4] Neither side briefed the issue of the Spencers' § 1983 claim based on the strip searches conducted when they reached the Greene County Jail. However, because those searches did not violate the Fourth Amendment, summary judgment will be granted on that claim as well. *See N.G. v. Connecticut*, 382 F.3d 225, 237 (2d Cir. 2004); *Stanley v. Henson*, 337 F.3d 961 (7th Cir. 2003). Similarly, summary judgment will be granted on the unlawful prosecution claim because no criminal charges were filed against the Spencers.